Case 4:23-cv-03058   Document 31   Filed on 07/19/24 in TXSD   Page 1 of 11

United States District Court
Southern District of Texas
**ENTERED**
July 19, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JAVIER RIVAS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H:23-3058 |
| | § | |
| 2ML REAL ESTATE INTERESTS, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

Javier Rivas slipped and fell while shopping at a Fiesta Mart in Houston, Texas. He sues Fiesta Mart, LLC, alleging a failure to properly maintain the premises. (Docket Entry No. 1). The other defendants, 2ML Real Estate Interests, Inc. and Sayda Reyes have been dismissed as improperly joined. (Docket Entry No. 11). Fiesta Mart moves for summary judgment on the basis that it had neither actual nor constructive notice of the presence of any slippery substance on the floor before Rivas fell. (Docket Entry No. 20). Rivas responds that Fiesta Mart destroyed surveillance video that might have shown the area where he had slipped and fallen. Rivas moves for a finding of spoliation and the imposition of sanctions against Fiesta Mart. (Docket Entry No. 21).

Based on the parties' briefing, summary judgment evidence, the record, and the relevant law, the court declines to give an adverse inference instruction against Fiesta Mart but will allow the jury to hear evidence as to the reason the surveillance video for the day and in the general area where Rivas fell is not available at trial. Fiesta Mart's motion for summary judgment is denied. The reasons for these rulings are set out below.

I.     Background

In June 2022, Rivas was shopping at a Fiesta Mart. He slipped in the aisle in front of the meat counter, landing on his back and hitting his knee. (Docket Entry Nos. 22 at 1-2, 7, 22-1). Sayda Reyes, the on-duty manager, arrived at the area of the store where Rivas had fallen, filled out an incident report, and put that incident report on the desk of Federico Rodriguez, the store manager. (Docket Entry No. 21 at 4). Rodriguez was not in the store that day. The incident report stated that there was "water/blood" on the floor in the area where Rivas slipped. (Docket Entry No. 22-1). Rivas took a picture of this incident report. The picture is the only copy of the report preserved in this case. (Docket Entry No. 21 at 8).

Both Reyes and Rivas testified that they did not see what Rivas slipped on. (Docket Entry No. 23 at 2). An unknown Fiesta Mart employee had cleaned the area after Rivas fell but before Reyes arrived at that part of the store. (Docket Entry No. 22 at 5). Reyes testified that she noted "water/blood" in the incident report based on what Rivas told her. (Docket Entry No. 23 at 2). Rivas testified that Reyes had told him that the substance on the floor where he fell was "water/blood." (Docket Entry No. 22 at 5).

Reyes testified that she inspected the floor of the meat department when she did her morning walk at or near the time the store opened at 7:00 a.m. (Docket Entry No. 22 at 8). Reyes's inspection walk did not reveal a slippery part of the floor near the meat department. The facts do not show whether any other employee inspected the area between that time and when Rivas slipped and fell at approximately 10:45 a.m. The incident report, Reyes's testimony, and Fiesta Mart's discovery responses indicate that there was a housekeeping employee in the area where Rivas fell. Fiesta Mart's documents showing who had clocked in on the day of the incident does not show whether this individual was present. The testimony of this individual could not be obtained. (*Id.*

2

at 8). Only one meat department employee had clocked in, and he was behind the meat counter when Rivas fell. (*Id.* at 8-9).

Fiesta Mart trains its managers to preserve video evidence in the wake of a customer slip and fall or other customer mishaps. Fiesta Mart instructs employees to email claimsGL@fiestamart.com to inform corporate management of incidents such as a customer falling at the store. (Docket Entry No. 26 at 4). No managers or employees sent any emails to claimsGL@fiestamart.com regarding Rivas's fall. (Docket Entry No. 21 at 7). None of the managers present on the day Rivas fell took steps to prevent the routine destruction of the video recording of that part of the store. The video footage might have shown the area where Rivas fell. (*Id.* at 6). No manager or other Fiesta Mart representative preserved the incident report. (*Id.* at 8).

The facts are disputed as to whether Rodriguez, the store manager, received notice of the incident or saw Reyes's report. (Docket Entry No. 24 at 6). Rodriguez was out of the store when Rivas fell. Reyes testified that she contacted Rodriguez via text and phone, asking him how to complete the incident report and where she should put it in his office so that he could "do [his] part." (Docket Entry No. 21 at 6). In her deposition, Reyes opened her phone and read into the record the text messages she sent to Rodriguez on the date of the incident. (Docket Entry No. 26 at 4). Rodriguez testified that he does not recall communicating with Reyes about the incident or seeing the incident report on his desk. (Docket Entry No. 24 at 6).

According to Rodriguez, incident reports should be filled out by the store manager or assistant store manager. (*Id.*). On the day of the incident, however, neither Rodriguez, the store manager, nor an assistant store manager were present. (*Id.* at 5). Rodriguez testified that it would have been the responsibility of the assistant store manager to review and upload copies of any surveillance video. (*Id.* at 6-7). The camera system deletes video automatically by taping over it at

3

a preset frequency. (*Id.* at 7). No Fiesta Mart employee took any steps to prevent the routine deletion of surveillance video recordings by recording over those videos.

## II.   The Legal Standards

### A.  The Rule 56 Standard

"Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.*, 33 F.4th 747, 749 (5th Cir. 2022) (quoting Fed. R. Civ. P. 56(a)). "A fact is material if it might affect the outcome of the suit and a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Thompson v. Microsoft Corp.*, 2 F.4th 460, 467 (5th Cir. 2021) (quoting reference omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion[] and identifying" the record evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"When 'the non-movant bears the burden of proof at trial,' a party moving for summary judgment 'may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is [a dispute] of material fact warranting trial." *MDK S.R.L. v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022) (alteration in original) (quoting reference omitted). "However[,] the movant 'need not negate the elements of the nonmovant's case.'" *Terral River Serv., Inc. v. SCF Marine Inc.*, 20 F.4th 1015, 1018 (5th Cir. 2021) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)). "If 'reasonable minds could differ' on 'the import of the evidence,' a court must deny the motion." *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986)).

After the movant meets its Rule 56(c) burden, "the non-movant must come forward with 'specific facts' showing a genuine factual issue for trial." *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 581 (5th Cir. 2021) (quoting references omitted). The nonmovant "must identify specific evidence in the record and articulate the 'precise manner' in which the evidence" aids their case. *Shah v. VHS San Antonio Partners, L.L.C.*, 985 F.3d 450, 453 (5th Cir. 2021) (quoting reference omitted). Of course, all reasonable inferences are drawn in the nonmovant's favor. *Loftin v. City of Prentiss*, 33 F.4th 774, 779 (5th Cir. 2022). But a nonmovant "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 369 (5th Cir. 2021) (quoting reference omitted).

### B.  The Standard for Spoliation

"A party's duty to preserve evidence comes into being when the party has notice that the evidence is relevant to the litigation or should have known that the evidence may be relevant." *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015) (citing *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 612 (S.D. Tex. 2010)). Spoliation is "the destruction of evidence . . . or the significant and meaningful alteration of a document or instrument." *Andrade Garcia v. Columbia Med. Ctr.*, 996 F. Supp. 605, 615 (E.D. Tex. 1998) (quoting reference omitted). A court may impose sanctions if a party with a duty to preserve evidence fails to do so and acts with culpability. Fed. R. Civ. P. 37(c)(1). Allegations of evidence spoliation are addressed by Rule 37. See *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46 (1991); *Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1408 (5th Cir. 1993); *Rimkus*, 688 F. Supp. 2d at 612.

Courts must apply Rule 37 sanctions "diligently both 'to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent.'" *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763–64 (1980) (alteration in original) (quoting reference omitted). In determining whether to impose

5

Rule 37 sanctions, courts consider: (1) the fairness of the sanction; (2) the substantial relationship between the sanction and the claim; and (3) if the sanction meets "the Rule 37 goals of punishing the party which has obstructed discovery and deterring others who would otherwise be inclined to pursue similar behavior." *Chilcutt v. United States*, 4 F.3d 1313, 1321 (5th Cir. 1993) (internal citation omitted). Any sanction should be tailored to the particular misconduct. *Batson v. Neal Spelce Assocs., Inc.*, 765 F.2d 511, 515 (5th Cir. 1985).

A sanction may include an instruction that if a party destroys or loses evidence subject to a preservation obligation, the fact finder may presume that the evidence was prejudicial. See *FDIC v. Hurwitz*, 384 F. Supp. 2d 1039, 1099–1100 (S.D. Tex. 2005) (citing *Nation-Wide Check Corp. v. Forest Hills Distribs., Inc.*, 692 F.2d 214, 217–18 (1st Cir. 1982)). In the Fifth Circuit, a severe sanction for spoliation, including an adverse-inference instruction, requires showing bad faith. *King v. Ill. Cent. R.R.*, 337 F.3d 550, 556 (5th Cir. 2003) (citing *United States v. Wise*, 221 F.3d 140, 156 (5th Cir. 2000)). "[A] party seeking the sanction of an adverse inference instruction based on spoliation of evidence must establish that: (1) the party with control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence was destroyed with a culpable state of mind; and (3) the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Rimkus*, 688 F. Supp. 2d at 615–16.

### III. Analysis

#### A. The Premises Liability Claim

Under Texas law, "a property owner generally owes those invited onto the property a duty to make the premises safe or to warn of dangerous conditions as reasonably prudent under the circumstances." *Robbins v. Sam's East, Inc.*, No. 21-20050, 2021 WL 3713543, at *1 (5th Cir. Aug. 20, 2021) (per curiam) (quoting *Occidental Chem. Corp. v. Jenkins*, 478 S.W.3d 640, 644

(Tex. 2016)). "To prevail on a premises liability claim against a property owner, an injured invitee must establish four elements: (1) the owner had actual or constructive knowledge of the condition causing the injury; (2) the condition posed an unreasonable risk of harm; (3) the owner failed to exercise reasonable care to reduce or eliminate the risk; and (4) the owner's failure to use such care proximately caused the invitee's injuries." *Id.* (citing *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 358 (5th Cir. 2017)).

A condition poses an unreasonable risk of harm when there is "a sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar event as likely to happen." *Seideneck v. Cal Bayreuther Assocs.*, 451 S.W.2d 752, 754 (Tex. 1970). "[A]n unreasonably dangerous condition for which a premises owner may be liable is the condition at the time and place injury occurs, not some antecedent situation that produced the condition." *Brookshire Grocery Co. v. Taylor*, 222 S.W.3d 406, 408-09 (Tex. 2006) (holding that while the ice on the floor might be unreasonably dangerous, the self-serve soft-drink display which produced the ice was not). "A condition is not unreasonably dangerous simply because it is not foolproof." *Id.* at 408. The question in this case is not whether the meat department itself was unreasonably dangerous, but whether Fiesta Mart was on notice of a particular dangerous condition in the department at the time of the fall.

A plaintiff may satisfy the knowledge element in a slip-and-fall case by pointing to evidence showing that: "(1) the defendant placed the substance on the floor; (2) the defendant actually knew of the condition; or (3) it is more likely than not that the condition existed long enough to give the premises owner a reasonable opportunity to discover it." *Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 814 (Tex. 2002). The record does not show that a Fiesta Mart employee had placed a mix of blood and water on the floor in front of the meat counter. Nor does the record

7

present evidence that Fiesta Mart had actual knowledge that there was an area of the floor in the meat aisle where there was a mix of blood and water.

An inference of constructive notice "requires proof that an owner had a reasonable opportunity to discover the defect." *Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 567 (Tex. 2006) (per curiam). A court analyzes "the combination of proximity, conspicuity, and longevity" of the alleged defect: the proximity of the premises owner's employees to the hazard, the conspicuousness of the hazard, and how long the hazard was in place. *Id.* at 567–68 (quoting *Reece*, 81 S.W.3d at 816). For a premises owner to be charged with constructive notice, a dangerous condition must have "existed for some length of time." *Reece*, 81 S.W.3d at 815 (citations omitted). If the dangerous condition is conspicuous, "then an employee's proximity to the condition might shorten the time in which a jury could find that the premises owner should reasonably have discovered it." *Id.* at 816. "[S]howing that [the owner] knew that water could be on the floor or that there was a risk that water might be on the floor does not suffice." *Gregg v. Walgreen Co.*, 625 S.W.3d 636, 645. *See City of Dallas v. Thompson*, 210 S.W.3d 601, 603 (Tex. 2006) (stating that actual knowledge is not satisfied by the mere possibility that a dangerous condition can develop over time).

In this case, there is scant evidence of how long the alleged mix of blood and water may have been on the floor before Rivas fell. Although there were surveillance video cameras covering the area where Rivas fell, Fiesta did not take the steps necessary to prevent the relevant recordings from being taped over in the ordinary course of business. It is unclear whether the deleted recordings would have shown with the area where Rivas fell. Even if it did, it is unclear that any surveillance camera footage would have shown the condition of the floor with sufficient detail to be useful as evidence. The picture of the incident report written by Reyes shows that the report

8

stated that there was "water/blood" on the floor in the area where Rivas slipped. (Docket Entry No. 22-1). Reyes has testified that an unknown Fiesta Mart employee had cleaned in the area after Rivas fell but before Reyes arrived at that part of the store. Reyes testified that she wrote "water/blood" to describe the slippery part of the floor where Rivas fell based on Rivas's testimony. (Docket Entry No. 23 at 2). Rivas has testified that Reyes had told him that the substance on the floor where he fell was "water/blood" based on her own observation. (Docket Entry No. 22 at 5).

The record is insufficient to show that, as a matter of law, Fiesta Mart had actual or constructive notice of the presence of a mix of blood and water on the floor in front of the butcher department before Rivas fell. However, because of the preservation issue, including the missing incident report and the lack of video evidence, the court denies Fiesta Mart's motion for summary judgment.

### B. Spoliation and Sanctions

Rivas asks the court to give "spoliation instruction in Plaintiff's favor to the jury and precluding Defendants from offering any evidence or testimony to suggest the absence of actual or constructive notice of the mixture of blood and water that Mr. Rivas slipped on." (Docket Entry No. 21 at 5). A party seeking to strike a pleading or defense, or to subject the opposing party to an adverse inference, must show that: "(1) the party with control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence was destroyed with a culpable state of mind; and (3) the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Rimkus*, 688 F. Supp. 2d at 615–16.

"A party's duty to preserve evidence comes into being when the party has notice that the evidence is relevant to the litigation or should have known that the evidence may be relevant." *Guzman*, 804 F.3d at 713 (citing *Rimkus*, 688 F. Supp. 2d at 612). "'Mere negligence is not enough' to warrant an instruction on spoliation." *Rimkus*, 688 F. Supp. 2d at 614 (quoting *Russell v. Univ. of Tex. of Permian Basin,* 234 Fed. Appx. 195, 208 (5th Cir. 2007)). The parties dispute whether Fiesta Mart had notice of an incident occurring because Reyes's incident report has been lost and Rodriguez's texts were not produced.

The evidence in the record regarding the loss of the incident report, leading to the failure to preserve video, does not show a culpable state of mind. The current record shows that Rodriguez was negligent in maintaining his records and his office but does not show that he deliberately destroyed the incident report. Without the incident report, there was no reason for Rodriguez to take steps to preserve the video feed from the surveillance camera. That video was destroyed through routine over-recording, which was Fiesta Mart's regular practice to allow. (Docket Entry No. 24 at 6). Under Federal Rule of Civil Procedure 37, the court can impose lesser measures to redress Fiesta Mart's inability to make information available in litigation because it did not take steps to preserve that information. The court will allow Fiesta Mart witnesses to be questioned about why the surveillance camera tape recording on the date and in the area where Rivas fell is not available. The witnesses may also testify as to whether the recording would have clearly shown the condition of the floor in the area where Rivas fell. The court denies the motion for the severe sanctions that Rivas sought.

## IV. Conclusion

The motion by Rivas for sanctions for spoliation of evidence is denied. (Docket Entry No. 21). The motion by Fiesta Mart for summary judgment is denied. (Docket Entry No. 20).

SIGNED on July 19, 2024, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge